IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA<br>EX REL. SCOTT PRUITT,<br>in his official capacity as<br>Attorney General of Oklahoma,<br><br>    Plaintiff,<br>v.<br><br>KATHLEEN SEBELIUS,<br>in her official capacity as<br>Secretary of the United States<br>Department of Health and Human<br>Services; and<br><br>TIMOTHY GEITHNER,<br>in his official capacity as<br>Secretary of the United States<br>Department of the Treasury,<br><br>    Defendants. | Case No. CIV 11-030-RAW |

**FILED**
JAN 21 2011
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

**COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff states the following for its Complaint:

### Introduction

  1. Section 1501 of the "Patient Protection and Affordable Care Act," P.L. 111-148, as amended by the "Health Care and Education Reconciliation Act of 2010," P.L. 111-152 (collectively, "the Act"), contains an individual mandate that, after December 31, 2013, will require a majority of Oklahomans to either purchase health insurance for themselves and their dependants or pay a civil penalty designed to coerce them into such a purchase.

  2. On November 2, 2010, the people of Oklahoma overwhelmingly approved State

Question No. 756. Once that state question was certified on November 9, 2010, Oklahoma's Constitution was amended. The newly-added Section 37 of Article 2 of Oklahoma Constitution (Oklahoma's Bill of Rights) provides in relevant part, "**[t]o preserve the freedom of Oklahomans to provide for their health care...[a] law or rule shall not compel, directly or indirectly, any person, employer or health care provider to participate in any health care system[.]**" Okla. Const. Art. 2 § 37 (emphasis added).

3. Section 1501 of the Act and Section 37 of Article 2 of the Oklahoma Constitution are conflicting provisions that cannot coexist. The collision between the state and federal schemes creates an immediate, actual controversy involving antagonistic assertions of right. The federal government is currently taking measures, in conjunction with state officials, to implement all sections of the Act—including the individual mandate. Thus, although the individual mandate does not take effect for several years, the Act imposes immediate and continuing burdens on Oklahoma and its sovereign interests.

**Parties**

4. The State of Oklahoma is a State of the United States of America with all rights and powers of a State under the United States Constitution, including the sovereign power over individuals and entities within its jurisdiction and the power to create and enforce legal codes– statutes and constitutional provisions.

5. Scott Pruitt, in his official capacity as Attorney General, brings this action on behalf of the State of Oklahoma as the chief law officer for the State of Oklahoma. In that capacity, he has a statutory duty to prosecute and defend all actions and proceedings in any federal court in which the state is interested as a party. 74 O.S. § 18b(A)(1). The State of Oklahoma has an interest in asserting the validity of its anti-mandate amendment because

pursuant to the Supremacy Clause, Oklahoma's amendment must yield to the Act's individual mandate—*unless* the mandate is declared unconstitutional.

6.   In this case, "the mere existence of [Okla. Const. Art. 2 § 37] is sufficient to trigger the duty of the Attorney General of [Oklahoma] to defend the law and the associated sovereign power to enact it." *Cuccinelli v. Sebelius*, 702 F.Supp.2d 598, 605-06 (E.D.Va. 2010). Indeed, federal courts have long recognized the duty of state attorneys general to defend the constitutionality of the laws of their states. *See* Fed. R. Civ. P. 5.1(a)(2) (requiring that any party challenging the constitutionality of a state statute serve notice on the state attorney general).

7.   Kathleen Sebelius in her official capacity as Secretary of the United States Department of Health and Human Services is responsible for administering and enforcing the Act.

8.   Timothy Geithner in his official capacity as Secretary of the United States Department of the Treasury is responsible for administering and enforcing the Act.

## Jurisdiction and Venue

9.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and is authorized to enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and to grant injunctive relief pursuant to 28 U.S.C. § 2202.

10.   Venue is proper under 28 U.S.C. § 1391(e)(2).

## Facts

11.   Congress in the past has used its taxing and spending powers to establish social welfare programs such as Social Security and Medicare, but has declined to fund universal healthcare in a similar manner, as the tax burden imposed by such an undertaking would be so burdensome as to render any such proposal unpalatable to the voting public, thereby causing

Congress to make findings in Section 1501 of the Act identifying the Commerce Clause, rather than the General Welfare Clause, as the source of its power.

12. Congress utilized its alleged Commerce Clause power in this instance to fund universal health care in part by mandating individual participation in the health insurance marketplace. Such an individual mandate allows the costs of healthcare for older and less healthy citizens to be subsidized by the insurance premiums paid by a new class of forced participants—many of whom are healthy young adults and other rationally uninsured individuals.

13. The individual mandate, found in the "Minimum Essential Coverage Provision" found at 26 U.S.C. § 5000A, disincentives voluntary non-participation in the health insurance marketplace—even for those citizens for whom it would make no economic sense to pay premiums before becoming ill. The cross-subsidization compelled by the individual mandate is critical to the viability of the Act, rendering the individual mandate an essential element of the Act without which it would not have been passed and without which the statutory scheme cannot function—as evidenced by the Act's lack of a severability provision.

14. In fact, Secretary Sebelius has *conceded* that the individual mandate is *the* key, essential ingredient in the complex health care regulatory scheme established by the Act. Indeed, as the United States District Court for the Eastern District of Virginia noted in *Cuccinelli v. Sebelius*:

> At oral argument **the Deputy Assistant Attorney General of the United States, on behalf of the Secretary, described the effect of the Minimum Essential Coverage Provision as the critical element of the national health care scheme**, '[a]nd what the [congressional] testimony was, was if you do the preexisting condition exclusion and no differential healthcare status, **without a minimum coverage type provision, it will inexorably drive that market into extinction. And what somebody said more succinctly was, the market will implode.**

702 F.Supp.2d at 609 (emphasis added). Because the Act has no severability clause, and because

4

the individual mandate is admittedly essential to the Act, a finding that the individual mandate is unconstitutional must result in the striking down of the entire Act.

15.     Recognizing its centrality to the Act, as well as demonstrating its concern over whether it had the power to adopt the individual mandate under the Commerce Clause, Article I, Section 8 of the Constitution, the Senate Finance Committee asked the Congressional Research Service whether the individual mandate was constitutional. The Service replied:

> **Whether such a requirement would be constitutional under the Commerce Clause is perhaps the most challenging question posed by such a proposal, as it is a *novel* issue whether Congress may use this Clause to require an individual to purchase a good or a service.**

Cong. Research Serv. Requiring Individuals to Obtain Health Insurance: A Constitutional Analysis 3 (2009)(emphasis added).

## Count One

### Commerce Clause

16.     The status of being a citizen or resident of the State of Oklahoma is not a channel of interstate commerce; nor a person or thing in interstate commerce; nor is it an activity arising out of or connected with a commercial transaction. In fact, this status involves no activity at all— economic or otherwise. It is entirely passive.

17.     As a result, the Commerce Clause cannot be utilized to regulate this status. But that is exactly what Congress has purported to do with the individual mandate. However, as the Congressional Research Service cautioned, the Commerce Clause has thus far in our history never been found to give Congress the authority to "regulate" a citizen's non-activity by forcing citizens to buy a product from a private company. To depart from that history to permit the federal government to require the purchase of goods or services would deprive the Commerce Clause of any effective limits and would create powers indistinguishable from a general police

power, in total derogation of our constitutional scheme of enumerated powers.

18. To avoid this history, Secretary Sebelius has defended the individual mandate by arguing for a vast expansion of Congress's Commerce Clause powers. The Secretary claims that because the individual mandate is the "vital kinetic link that animates Congress's overall regulatory reform of interstate health care and insurance markets…it is necessary to make the other regulations in the Act effective," and is thus permissible. *Cuccinelli v. Sebelius*, 728 F.Supp.2d 768 (E.D.Va. 2010). The Secretary's argument is rooted in her belief that "because the guaranteed coverage and rate discrimination issues are unquestionably within the Commerce Clause powers," Congress can choose whatever mechanism it pleases to address those issues, regardless of whether the mechanism regulates activity, economic or otherwise. *Id.*

19. The Necessary and Proper Clause, however, has *never* been applied without limits (i.e., to *non-activity*) as the Secretary suggests should be done here. In fact, the Necessary and Proper Clause confers *supplemental* authority in instances such as those only when the means adopted to accomplish a legitimate exercise of Commerce Clause powers are "appropriate," are "'plainly adapted' to that end," and are "consistent with the letter and spirit of the constitution." *Id.* (citing *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819)).

20. A law that takes money from individual citizens and gives it to private insurance companies is fundamentally contrary to the letter and spirit of the constitution, is a wholly inappropriate exercise of Congress's Necessary and Proper power, and cannot constitute a means to accomplish any legitimate exercise of Commerce Clause powers. Indeed, from its very first substantive opinion, the Supreme Court recognized that certain laws are *never* "consistent with the letter and spirit of the constitution":

> An ACT of the Legislature (for I cannot call it a law) contrary to the great first principles of the social compact, cannot be considered a

> rightful exercise of legislative authority. The obligation of a law in governments established on express compact, and on republican principles, must be determined by the nature of the power, on which it was founded. A few instances will suffice to explain what I mean. A **... law that takes property from A and gives it to B: It is against all reason and justice, for a people to entrust a Legislature with SUCH powers**; and therefore it cannot be presumed that they have done it.

*Calder v. Bull,* 3 U.S. 386, 388 (1798)(emphasis added).

21. Because the Act exceeds the powers given to Congress by the Commerce Clause and Necessary and Proper Clause, it should be declared unconstitutional, and Defendants should be permanently enjoined from enforcing its provisions.

## Prayer for Relief

**WHEREFORE**, the State of Oklahoma prays the Court grant it the following relief:

A. A declaratory judgment that § 1501 of the Act is unconstitutional because the individual mandate exceeds the enumerated powers conferred upon Congress. Further, because the individual mandate is an essential, non-severable provision, the State of Oklahoma is also entitled to a declaratory judgment that the entire the Act is likewise invalid.

B. A permanent injunction forbidding Defendants from prospectively enforcing § 1501 in particular and the Act as a whole.

C. Such other equitable relief to which the State of Oklahoma may be entitled.

Dated this 21st day of January, 2011.

Respectfully submitted,

_____
By:  E. SCOTT PRUITT OBA #15828
ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-4396
405 235-0669 (facsimile)
Service email: fc.docket@oag.state.ok.gov
Scott.Pruitt@oag.ok.gov