## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **STATE OF OKLAHOMA** | ) | |
| **ex rel. E. Scott Pruitt,** | ) | |
| **in his official capacity as Attorney** | ) | |
| **General of Oklahoma,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-030-RAW** |
| | ) | |
| **KATHLEEN SEBELIUS,** | ) | |
| **in her official capacity as** | ) | |
| **Secretary of the United States** | ) | |
| **Department of Health and** | ) | |
| **Human Services;** | ) | |
| **and** | ) | |
| **TIMOTHY GEITHNER,** | ) | |
| **in his official capacity as** | ) | |
| **Secretary of the United States** | ) | |
| **Department of the Treasury,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff states the following for its Amended Complaint:

### Introduction and Background Facts

### I.      The Original Claim

1.      On January 21, 2011, Plaintiff filed its Complaint (Dkt. #2) initiating this action. In that Complaint, Plaintiff alleged that Section 5000A ("the Individual Mandate") of the "Patient Protection and Affordable Care Act," P.L. 111-148, as amended by the "Health Care and Education Reconciliation Act of 2010," P.L. 111-152 (collectively, "the Affordable Care Act" or "the Act"), was an unconstitutional exercise of Congress's Commerce Clause and Necessary and Proper Clause powers.

2.     The Complaint alleged that because the Individual Mandate purported to require a majority of Oklahomans to either purchase health insurance for themselves and their dependents or pay a civil penalty designed to coerce them into such a purchase, the Individual Mandate was in conflict with Section 37 of Article 2 of the Oklahoma Constitution (Oklahoma's Bill of Rights), which provides in relevant part, "[t]o preserve the freedom of Oklahomans to provide for their health care ...[a] law or rule shall not compel, directly or indirectly, any person, employer or health care provider to participate in any health care system[.]" Okla. Const. Art. 2 § 37.

3.     The Complaint thus sought declaratory and injunctive relief recognizing that, because the Individual Mandate was an unconstitutional exercise of Congress's Commerce Clause and Necessary and Proper Clause powers, Oklahoma's constitutional provision remained an un-preempted exercise of the State's sovereign police power. However, because the United States Supreme Court accepted certiorari in a case attacking the Individual Mandate on similar grounds, this Court stayed the litigation pending the outcome of that case.

4.     On June 28, 2012, the Supreme Court announced its decision in *Nat'l Fed'n of Indep. Bus. et al. v. Sebelius et al.*, No 11-393, (U.S. June 28, 2012) ("*NFIB*"), resolving the Commerce Clause and Necessary Proper Clause issues raised in the Complaint.

5.     Specifically, the *NFIB* Court held that the Commerce Clause and Necessary and Proper Clauses of the United States Constitution do not give Congress the authority to compel individuals to purchase health insurance. *Nat'l Fed'n of Indep. Bus. et al.*, No. 11-393, slip op. at 30. ("Just as the individual mandate cannot be sustained as a law regulating the substantial effects of the failure to purchase health insurance, neither can it be upheld as a necessary and proper component of the insurance reforms. The commerce power thus does not authorize the

2

mandate."); *see also id.* at *45 ("The Federal Government does not have the power to order people to buy health insurance. Section 5000A would therefore be unconstitutional if read as a command."). The Court nonetheless upheld the so-called "individual mandate" as an exercise of Congress's power to lay and collect taxes by construing Section 5000A(a) not to mandate that any individual have coverage under minimum essential coverage but construing Section 5000A(b) as imposing a tax on taxpayers who are applicable individuals and who do not have such coverage. *Id.* at 45-46 ("The Federal Government does have the power to impose a tax on those without health insurance. Section 5000A is therefore constitutional, because it can reasonably be read as a tax."); *see also id.* at 43 ("If a tax is properly paid, the Government has no power to compel or punish individuals subject to it.").

6.      The *NFIB* Court thus confirmed that Section 5000A, to the extent it is a mandate, violates the constitution in exactly the manner described in Plaintiff's complaint. And as a result, Article II, Section 37 of Oklahoma's Constitution has not been preempted insofar as it protects Oklahomans from being forced to buy health insurance.

7.      Plaintiff thus seeks a judgment on that original claim that, consistent with the *NFIB* Court's decision, recognizes the validity of the Individual Mandate as an exercise of the Taxing Power, while at the same time recognizing that Article II, Section 37 of Oklahoma's Constitution remains valid as a protection against *mandated* purchases of health insurance.

## II.    The New Claims

8.      In addition to that claim, Plaintiff raises new claims seeking declaratory and injunctive relief with respect to final federal regulations (the "Final Rule") that were issued under Internal Revenue Code Section 36B, as added by Section 1401 of the Act, while proceedings in this action were stayed. The Final Rule was issued in contravention of the

procedural and substantive requirements of the Administrative Procedures Act ("the APA"), 5 U.S.C. § 702; has no basis in any law of the United States; and directly conflicts with the unambiguous language of the very provision of the Internal Revenue Code it purports to interpret.

9.     More specifically, Sections 1311 and 1321(c) of the Act allows States to choose to establish an "American Health Benefit Exchange" to operate in the State to facilitate execution of the Act's key provisions. If a State elects not to establish an Exchange under Section 1311, Section 1321(b) authorizes the Secretary of Health and Human Services to create an Exchange to operate in that state.

10.     Under the Act, this choice has important consequences for the State's people and the State's economy, because health insurance premium tax credits for low-income employed individuals and employer obligations under the Act both depend on which alternative the State chooses.  If the State elects to establish its own Exchange, the Federal Government government will make "advance payments" of premium tax credits to insurance companies on behalf of some of the State's residents to subsidize health insurance enrollment through the State-created Exchange, but the payment of the subsidy for even one employee triggers costly obligations on the part of the employer that would not be triggered in a non-electing State, placing the electing State at a competitive disadvantage for jobs and job growth.

11.     The Act leaves this policy judgment to each State and provides a mechanism for each State to choose the alternative it thinks is better for its people.  The Final Rule upsets this balance by providing, contrary to the Act, that qualifying taxpayers are eligible for premium tax credits and "advance payments" if they enroll for health insurance through the Exchange where they live, regardless of whether it is a State-established Exchange or an HHS-established

Exchange. Thus, if the Final Rule is permitted to stand, federal subsidies will be paid under circumstances not authorized by the Congress; employers will be subjected to liabilities and obligations under circumstances not authorized by Congress; and States will be deprived of the opportunity created by the Act to choose for itself whether creating a competitive environment to promote economic and job growth is better for its people than access to federal subsidies.

12.     Oklahoma has not established or elected to establish an Exchange, and does not expect to do so. As a result, under the plain terms of the Act, employers in Oklahoma should not be subject to the  Employer Mandate because of a determination that an Oklahoma resident employed by the employer in Oklahoma is entitled to advance payment of a premium tax credit because of enrolling for coverage through an Exchange established by HHS to operate in Oklahoma. However, the Final Rule purports to make such an individual eligible for a premium tax credit based on enrolling for coverage through an Exchange established by HHS to operate in Oklahoma, with the result that an Oklahoma employer employing such an individual will be exposed to liability under the Employer Mandate under circumstances not provided for under the Act. Thus, Plaintiff seeks declaratory and injunctive relief declaring the Final Rule invalid.

**Parties**

13.     The State of Oklahoma is a State of the United States of America with all rights, powers, and immunities of a State under the United States Constitution, including the sovereign power over individuals and entities within its jurisdiction and the power to create and enforce legal codes, statutes, and constitutional provisions.

14.     Scott Pruitt, in his official capacity as Attorney General, brings this action on behalf of the State of Oklahoma as the chief law officer for the State of Oklahoma.  In that capacity, he has a statutory duty to prosecute and defend all actions and proceedings in any

federal court in which the State is interested as a party. 74 O.S. § 18b(A)(1).  The State of Oklahoma has an interest in asserting the invalidity of the Final Rule and Section 1321(c) because the Final Rule affects (1) the ability of the State to attract and retain employers (along with the tax revenues those employers pay into the State each year) and to maintain a competitive environment to attract new businesses, and (2) the State in its capacity as a large employer that would presumably be subject to the Act's "employer mandate" and the accompanying possibility of end-of-the-year tax assessments by the IRS. The State of Oklahoma similarly has an interest in determining the prospective validity of  Article II, Section 37 of Oklahoma's Constitution

15.    Timothy Geithner, in his official capacity as Secretary of the United States Department of the Treasury, oversees the IRS, and thus also is responsible for administering and enforcing IRS rules and regulations.

16.     Kathleen Sebelius in her official capacity as Secretary of the United States Department of Health and Human Services is responsible for administering and enforcing the Act.the regulations.

**Jurisdiction and Venue**

17.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and is authorized to enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and to grant injunctive relief pursuant to 28 U.S.C. § 2202.

18.     Venue is proper under 28 U. S.C. § 1391(e)(2).

**Additional Facts**

19.    Title I, Subtitle D, Parts II and III of the Affordable Care Act call for the creation and operation of markets, referred to in the Act as "Exchanges,"  in which health insurance

6

coverage will be offered to individuals.  The coverage to be offered to individuals through the Exchanges is coverage under a "Qualified Health Plan" (as that term is defined for purposes of the Act) for the individual, the individual's spouse, and/or the individual's dependents (collectively with the individual's spouse, "Dependents").

20.     Section 1311 of the Affordable Care Act provides for the establishment of an Exchange by a State.

21.     Section 1321(c) of the Affordable Care Act provides for the establishment of an Exchange by the Federal Government.

22.     In the case of an individual who meets certain criteria, including a household income criterion (a "Qualifying Individual"), Title I, Subtitle E, Part I, Subparts A and B of the Affordable Care Act effectively provide for subsidizing the Qualified Individual's health insurance coverage if the Qualified Individual enrolls for the coverage through an Exchange established by a State under Section 1311 of the Affordable Care Act.

23.     The subsidy with respect to a Qualifying Individual consists of a payment from the Treasury ("Advance Payment") under the conditions established in Sections 1401, 1411 and 1412 of the Act to the issuer of the health insurance coverage in which the Qualified Individual enrolled through the State Exchange established under Section 1311.  The amount of the Advance Payment made on behalf of the Qualified Individual for a month is the amount that the Exchange determines the Qualified Individual will be allowed to take as a credit against the individual's income tax under Code Section 36B (the "Premium Tax Credit").

24.     Code Section 36B is effective for taxable years beginning after December 31, 2013.  Section 36B(b) provides a formula for computing the amount of the Premium Tax Credit for each month of the taxable year.  Under that formula, the Premium Tax Credit for a month is

zero under all circumstances unless during that month the Qualified Individual and/or a Dependent was covered under a Qualified Health Plan and was enrolled for such coverage "through an Exchange established by a State under Section 1311 of the Patient Protection and Affordable Care Act" ("State Exchange").

25.     Section 4980H was added to the Internal Revenue Code by Section 1501 of the Affordable Care Act.  Section 4980H is effective for months beginning on or after January 1, 2014, giving it an effective date coordinated with Code Section 36B.

26.     Code Section 4980H is potentially applicable to an "Applicable Large Employer," defined to mean an employer that employed on average 50 or more full-time equivalent employees on business days during the prior year.

27.     The requirements imposed on an Applicable Large Employer under Code Section 4890H are triggered if and only if an Advance Payment is or could have been made or a Premium Tax Credit is or could be allowed to or on behalf of one of the employer's full time employees.

28.     When Code Section 4980H is triggered with respect to an Applicable Large Employer, it imposes an assessment (the "Assessable Payment") on the Applicable Large Employer, unless the employer had arranged in advance to make "minimum essential coverage" that has a regulatorily-determined "minimum value" available to its full-time employees and/or their dependents through an "eligible employer-sponsored plan" at a cost satisfying standards of "affordability" under the Act.

29.     Although the Assessable Payment can be triggered by a Premium Tax Credit, it is not proportional to the Premium Tax Credit that triggers it.  Under Code Section 4980H(a), the annual assessable amount is $2,000 for each full time employee above 30 employed by the

employer.  Thus, if just one of an employer's 600 full-time employees is eligible for a Premium Tax Credit, the employer's annual Assessable Amount will be $1,140,000.

30.     On May 18, 2012, Defendants Geithner and Treasury issued the Final Rule, which incorporated the definition of the word "Exchange" in final regulations issued by Defendants Sebelius and HHS on March 25, 2012.  The word "Exchange" is defined in the HHS regulations to include a "Federally-facilitated Exchange."

31.     On information and belief, Defendants interpret the phrase "Federally-facilitated Exchange" to refer to an Exchange that is not established by a State under Section 1311 of the Affordable Care Act.

32.     Defendants interpret and will continue to interpret the Final Rule to permit Advance Payments under ACA Sections 1411 and 1412 on behalf of Qualified Individuals and/or their Dependents who have not enrolled for coverage through a State Exchange under Section 1311 of the Act, and to permit Qualified Individuals to take Premium Tax Credits under Code Section 36B even if those Qualified Individuals and/or their Dependents have not enrolled for coverage through a State Exchange under Section 1311 of the Act.

33.     If Defendants' interpretation of the Final Rule is upheld, and the Final Rule as so interpreted are upheld, (1) the Federal Government will make Advance Payments under circumstances not authorized by law; (2) Applicable Large Employers will be forced to take actions and incur expenses well in advance of January 1, 2014, to prepare for avoiding and/or minimizing exposure to Section 4980H Assessable Payments that Defendants will assert are triggered by such Advance Payments; (3) employers that maintain self-insured group health plans will be forced to take actions and incur expenses well in advance of January 1, 2014, to prepare for adverse selection against participation in their plans by employees whose purchase of

9

insurance coverage from an Exchange established by HHS under Section 1321(c) is subsidized by such Advance Payments; and (4) the State of Oklahoma will suffer irreparable harm because it will be deprived of an opportunity under the Act to make an important decision affecting the future of its people and its economy, because even if the State of Oklahoma decides that the interests of its people would be better served by the inapplicability of Code Section 4980H to in-State employers, the Final Rule prevents the State from electing that course of action.

34.     The State of Oklahoma has exercised its right not to establish an Exchange or grant permission to any Exchange created by any other State to operate within Oklahoma's borders. At present and for the foreseeable future, the State of Oklahoma has decided that the better alternative under the Act for the people of the State of Oklahoma is to preserve a competitive advantage in the area of job growth over States where Section 4980H liabilities can be triggered against employers.

35.     Code Section 36B and ACA Sections 1311 and 1321 not only permit the State of Oklahoma to make this policy choice, but also  created a mechanism, and the only mechanism, by which the State of Oklahoma can put its decision into effect.

36.     The Final Rule renders the mechanism inoperative, and therefore deprives the State of Oklahoma of the ability to put its decision into effect.

37.     The Final Rule already has had and will continue to have an adverse effect on employers within the State of Oklahoma.

## COUNT I

### (Commerce Clause and Necessary and Proper Clause - Declaratory and Injunctive Relief)

38.    Paragraphs 1 through 37 are incorporated herein by reference as if set forth in full.

39.    On June 28, 2012, the Supreme Court announced its decision in *Nat'l Fed'n of Indep. Bus. et al. v. Sebelius et al.*, No 11-393, (U.S. June 28, 2012) ("*NFIB*"), resolving the Commerce Clause and Necessary Proper Clause issues raised in the Complaint.

40.    Specifically, the *NFIB* Court held that the Commerce Clause and Necessary and Proper Clauses of the United States Constitution do not give Congress the authority to compel individuals to purchase health insurance. *Nat'l Fed'n of Indep. Bus. et al.*, No. 11-393, slip op. at 30. ("Just as the individual mandate cannot be sustained as a law regulating the substantial effects of the failure to purchase health insurance, neither can it be upheld as a necessary and proper component of the insurance reforms. The commerce power thus does not authorize the mandate."); *see also id.* at *45 ("The Federal Government does not have the power to order people to buy health insurance. Section 5000A would therefore be unconstitutional if read as a command."). The Court nonetheless upheld the so-called "individual mandate" by construing it as a tax, which by its very definition cannot compel conduct. *Id.* at 45-46 ("The Federal Government does have the power to impose a tax on those without health insurance. Section 5000A is therefore constitutional, because it can reasonably be read as a tax."); *see also id.* at 43 ("If a tax is properly paid, the Government has no power to compel or punish individuals subject to it.").

41.    The *NFIB* Court thus confirmed that Section 5000A, to the extent it is a mandate, violates the constitution in exactly the manner described in Plaintiff's Complaint. And as a

result, Article II, Section 37 of Oklahoma's Constitution has not been preempted insofar as it protects Oklahomans from being forced to buy health insurance.

42.     However, despite the *NFIB* Court's clear holding that construing the individual mandate as a penalty would violate the federal constitution, the Federal Government has continued to insist that the mandate is a commerce-regulating penalty. In fact, just one day after the *NFIB* decision was announced, White House Spokesman Tim Carney, when pressed by reporters as to whether the individual mandate was a tax or a penalty, stated "It's a penalty, because you have a choice. You don't have a choice to pay your taxes, right?" Olivier Knox, *White House: Sorry, Roberts, Obamacare Mandate is a Penalty, Not a Tax*,  June 29, 2012, available at:  http://abcnews.go.com/Politics/OTUS/white-house-roberts-obamacare-mandate-penalty-tax/story?id=16679772.

43.     Similarly, at least one Court of Appeals has expressed confusion as to the effect of the *NFIB* Court's Commerce Clause and Necessary Proper Clause holding:

> Two days after oral argument in this appeal, the Supreme Court decided *National Federation of Independent Business v. Sebelius*, ___ U.S. ___, 2012 U.S. LEXIS 4876 (June 28, 2012), which held that the federal statute requiring individuals to purchase health insurance is a valid exercise of Congress's tax power. Five justices also agreed that the Commerce Clause did not authorize this statute. There has been considerable debate about whether the statements about the Commerce Clause are dicta or binding precedent. *See, e.g.*, David Post, Commerce Clause "Holding v. Dictum Mess" Not So Simple, *The Volokh Conspiracy*. We need not resolve that issue here because National Federation of Independent Business involved a requirement that individuals take action.  *See Nat'l Fed'n of Indep. Bus*., 2012 U.S. LEXIS 4876, at *45 (Roberts, C.J.) ("Construing the Commerce Clause to permit Congress to regulate individuals precisely because they are doing nothing would open a new and potentially vast domain to congressional authority.") (emphasis in original).

*U.S. v. Henry*, No. 11-30181, slip op. at n.5 (9th Cir. August 9, 2012).

44.     Plaintiff thus seeks a declaratory judgment on that original claim that, consistent with the *NFIB* Court's decision, recognizes the validity of the Individual Mandate as an exercise of the Taxing Power, while at the same time recognizing that Article II, Section 37 of Oklahoma's Constitution remains valid as a protection against *mandated* purchases of health insurance. A permanent injunction should also be entered forbidding Defendants from prospectively enforcing Section 5000A of Act in a manner inconsistent with the above-described declaration. Because Defendants will suffer no damage as the result of issuance of injunctive relief, Plaintiff requests that bond be waived.

## COUNT II

### (Utra Vires - Declaratory Relief and Injunctive Relief)

45.     Paragraphs 1 through 44 are incorporated herein by reference as if set forth in full.

46.     The term "Federally-facilitated Exchange," the use of which in the Final Rule gives rise to this controversy, is not defined.  Moreover, HHS has issued informal statements describing differing degrees of federal involvement in Exchange creation.  These facts have caused confusion and reasonable disagreement as to whether the term "Federally-facilitated Exchange" was intended to refer to or include an Exchange established under Section 1321(c) of the Affordable Care Act.

47.     On information and belief, Defendants contend and will contend that a "Federally-facilitated Exchange" within the meaning of that term as used in 45 C.F.R. 155.20 means an Exchange other than a Section 1311 Exchange, i.e., other than a State Exchange, Regional Exchange, or Subsidiary Exchange.

48.     Defendants contend and will contend that a "Federally-facilitated Exchange" within the meaning of that term as used in 45 C.F.R. 155.20 and as incorporated into the Final Rule includes an Exchange established pursuant to Section 1321(c)(1) of the Affordable Care Act.

49.     Because of 45 C.F.R. 155.20, and the incorporation of its definition of "Exchange" into Treas. Reg. § 1.36B-1, Defendants contend and will contend that the term "Exchange" as used in Treas. Reg. § 1.36B-1 et seq. includes an Exchange operating within a State that is neither "a governmental agency or nonprofit entity that is established by [the] State" within which it operates nor "a governmental agency or nonprofit entity that is established by" any other State that satisfies the consent criterion of Section 1311(f)(1).

50.     Defendants interpret Treas. Reg. § 1.36B-1 et seq. and 45 C.F.R. 155.20 to provide that a Premium Tax Credit is allowable to a Qualified Individual if the Qualified Individual and/or any of his/her Dependents is enrolled for coverage for a coverage month under a Qualified Health Plan through a HHS Exchange established under ACA § 1321(c), even if neither the Qualified Individual nor any of his/her Dependents is enrolled for coverage under a Qualified Health Plan through a State Exchange under ACA § 1311 ("Defendants' Interpretation").

51.     Under Defendants' Interpretation, Treas. Reg. § 1.36B-1 et seq. and 45 C.F.R. 155.20 expand the circumstances under which an Applicable Large Employer must make an Assessable Payment unless it makes minimum essential coverage available under an eligible employer-sponsored plan as specified in the Act, with the result that an employer may be required to make an Assessable Payment under circumstances not provided for in any statute and explicitly ruled out by unambiguous language in the Affordable Care Act.

14

52.     Defendants' Interpretation is contrary to and irreconcilable with Code § 36B(b)(2), and is not supported by any statute, and therefore causes uncertainty on the part of the Plaintiff as to whether Defendants will implement Defendants' Interpretation of Treas. Reg. § 1.36B-1 et seq. and 45 C.F.R. 155.20.

53.     The confusion and uncertainty referred to above cause and will continue to cause Plaintiff to suffer injuries to its legally protected interests that cannot be remedied without the declaratory judgment sought under this First Cause of Action.

54.     Plaintiff is entitled to a declaration that the term "Exchange" as used in the Final Rule excludes any agency or entity other than (a) an agency or entity established by the State under ACA § 1311; or (b) an agency or entity, established by a different State under ACA § 1311, that is permitted by the first State to operate within the territory of the first State.

55.     Plaintiff is entitled to a declaration that a "Federally-facilitated Exchange" referred to in the Part 155 Regulations is an agency or entity excluded from the term "Exchange" as used in the Final Rule. A permanent injunction should also be entered forbidding Defendants from prospectively acting in a manner inconsistent with the above-described declaration. Because Defendants will suffer no damage as the result of issuance of injunctive relief, Plaintiff requests that bond be waived.

## COUNT III

### (Administrative Procedures Act - Declaratory and Injunctive Relief)

56.     Paragraphs 1 through 55 are incorporated herein by reference as if set forth in full.

57.     Pursuant to 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."

58.     The Final Rule is final agency action for purposes of 5 U.S.C. § 706(2)(A).

59.     Promulgating the Final Rule was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law in at least the following respects.

60.     Public comment in response to the Section 36B NOPR noted that the proposed Section 36B regulations would cause a Qualified Individual to be eligible for Advance Payments and Premium Tax Credits even if the Qualified Individual had coverage only through a HHS Exchange established under Section 1321 instead of coverage through a State Exchange under Section 1311 (a result that is ruled out by the text of the Affordable Care Act).  In this regard, one comment stated in part:

> Nowhere within the [statute] is an Exchange created under Section 1321 mentioned regarding eligibility of the [P]remium [T]ax [C]redit. Again, the IRS does not have the authority to expand access to a [P]remium [T]ax [C]redit beyond what is clearly written within PPACA.

61.     The same comment pointed out that expanding eligibility for Premium Tax Credits beyond what the Affordable Care Act authorizes would result in expanding the very harm under Code § 4980H that is alleged here, as follows:

> According to PPACA, an employer is subject to a $3,000 fine for each employee that is eligible to purchase from an Exchange and receives a [P]remium [T]ax [C]redit because their ESI is "unaffordable." As outlined above, this means that only employers in states with state-created Exchanges would be potentially subjected to this rule. However, if the NPRM language is adopted providing access to [P]remium [T]ax [C]redits regardless of who created the Exchange (State or federal) employers nationwide would be subject to this fine.

62.    The only language in the Notice of Final Rule that might be construed to indicate that the foregoing comment was taken into account is the following paragraph:

> Under the proposed regulations, the term Exchange has the same meaning as in 45 CFR 155.20, which provides that the term Exchange refers to a State Exchange, [R]egional Exchange, [S]ubsidiary Exchange, and Federally-facilitated Exchange. Commentators disagreed on whether the language in section 36B(b)(2)(A) limits the availability of the [P]remium [T]ax [C]redit only to [Qualified Individuals] who enroll in qualified health plans on State Exchanges.  The statutory language of section 36B and other provisions of the Affordable Care Act support the interpretation that credits are available to [Qualified Individuals] who obtain coverage through a State Exchange, [R]egional Exchange, [S]ubsidiary Exchange, and the Federally-facilitated Exchange.  Moreover, the relevant legislative history does not demonstrate that Congress intended to limit the [P]remium [T]ax [C]redit to State Exchanges.

> Accordingly, the final regulations maintain the rule in the proposed regulations because it is consistent with the language, purpose, and structure of section 36B and the Affordable Care Act as a whole.

63.    Moreover, in promulgating the Final Rule, the Treasury Department failed to consider contrary evidence and numerous contrary legal considerations (including but not limited to principles of statutory construction that require interpreting statutory language to preserve a State's ability to exercise its governmental authority), or to articulate a rational basis for not addressing them.

64.    The Final Rule furthers none of the Treasury Department's purported justifications.

65.    Treasury exceeded its statutory authority in interpreting Code Section 36B in such a manner that the Federal Government may make Advance Payments based on enrollment for coverage through an Exchange established by the Secretary of HHS under Section 1321(c).

66. The Final Rule is not based on any finding that Congress intended the executive branch of the Federal Government to make the policy decision regarding whether the people of a given State would be better off with Code Section 4980H applicable or inapplicable within that State, and the record would not have supported such a finding.

67. The Final Rule is not based on any finding that the executive branch of the Federal Government has any statutory authority to make the policy decision regarding whether the people of a given State would be better off with Code Section 4980H applicable or inapplicable within that State, and the record would not have supported such a finding.

68. The NOPR did not identify as an issue for consideration whether the people of every single State would be better off with Code Section 4980H applicable within each State.

69. The Final Rule is not based on any finding that the people of the State of Oklahoma would be better off with Code Section 4980H applicable in their State, and the record would not have supported such a finding.

70. A determination as to whether the people of a given State would be better off with Code Section 4980H applicable or inapplicable within that State is a policy decision left to each State to decide, and the Affordable Care Act is structured so that each State may put its determination into effect. Moreover, the mechanisms for Exchange establishment in the Affordable Care Act are structured so that affirmative action by a State government is required in order to cause Code Section 4980H to apply in the State. The inapplicability of Code Section 4980H because of the unavailability of Premium Tax Credits because of a State's non-establishment of an Exchange is the default rule under the Affordable Care Act, and in particular Section 1321(c).

71.     The Final Rule prevents a State, including the State of Oklahoma, from putting into effect its policy judgment, as permitted by law, as to whether creating a competitive environment to promote economic and job growth is better for its people than access to federal subsidies.

72.     For all these reasons, the Final Rule is arbitrary and capricious and does not provide the requisite substantial evidence and reasoned analysis to justify the final rule, in contravention of the APA.

73.     Plaintiff is  entitled to a judgment declaring that the Final Rule is invalid and enjoining its enforcement. Because Defendants will suffer no damage as the result of issuance of injunctive relief, Plaintiff requests that bond be waived.

**COUNT IV**

**(Request for a Declaration That the Final Rule Is Unconstitutional as Applied to Employees of the State of Oklahoma)**

74.     Paragraphs 1 through 73 are incorporated herein by reference as if set forth in full.

75.     If the Final Rule is upheld and applied to an employee or officer of the State of Oklahoma, the State of Oklahoma would be subject to the employer mandate in Code Section 4980H without the State's consent.

76.     Plaintiff believes that *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), as it relates to Congress's authority under the Commerce Clause, has been overtaken by subsequent decisions of the U.S. Supreme Court, and should be overruled, and that subjecting the State of Oklahoma in its capacity as an employer to the employer mandate would cause the Affordable Care Act to exceed Congress's legislative authority; to violate the Tenth

19

Amendment; to impermissibly interfere with the residual sovereignty of the State of Oklahoma; and to violate Constitutional norms relating to the relationship between the states, including the State of Oklahoma, and the Federal Government.

77.     Therefore, Plaintiff is entitled to a judgment that the Final Rule as applied to an employee of the State of Oklahoma is unconstitutional and void.

## COUNT V

**(Alternative Request for Declaration of the Unconstitutionality Of Section 1321( c) of the Act in the Event the Final Rule Is Upheld on the Basis That An Exchange Established Under Section 1321( c) Is An Exchange Described in Section 1311)**

78.     Paragraphs 1 through 77 are incorporated herein by reference as if set forth in full.

79.     As alleged in Paragraph 35 above, Plaintiff believes that Defendants interpret and will continue to interpret the Final Rule to permit Advance Payments and Premium Tax Credits even in circumstances where an individual has not enrolled for coverage through an Exchange established by a State under Section 1311, if the individual enrolled for coverage through an Exchange established by HHS under Section 1321(c ) of the Act.  It is possible that Defendants will assert that the Act provides or should be interpreted to provide that an Exchange established by HHS under Section 1321(c ) of the Act is a form of what the Act refers to as "an Exchange established by a State under Section 1311 of [the Act]."

80.     In light of the possibility described in Paragraph 81,  Plaintiff adds this Count V as an additional or  alternative claim for relief in the event that Defendants seek to justify the Final Rule based on an interpretation of the Affordable Care Act according to which an Exchange established by HHS pursuant to Section 1321(c ) of the Act is in any respect an Exchange established by a State pursuant to Section 1311 of the Act.

20

81.     If the Act provides or is interpreted to provide that an Exchange established by HHS under Section 1321(c ) of the Act is a form of what the Act refers to as "an Exchange established by a State under Section 1311 of [the Act]," then Section 1321( c) is unconstitutional because it commandeers state governmental authority with respect to State Exchanges, permits HHS to exercise a State's legislative and/or executive power, and otherwise causes the Exchange-related provisions of the Act (including but not limited to Sections 1311, 1321, 1401, 1411, and 1412) to exceed Congress's legislative authority; to violate the Tenth Amendment; to infringe  on the residual sovereignty of the States under the Constitution; and to violate Constitutional norms relating to the relationship between the states, including the State of Oklahoma, and the Federal Government.

### Prayer for Relief

WHEREFORE, the State of Oklahoma prays the Court grant it the following relief:

A.     A declaration that Section 5000A of the Act, while valid as a tax, is invalid as a mandate to purchase health insurance, and thus does not preempt Section 37 of Article 2 of the Oklahoma Constitution to the extent Section 37 operates as a protection against mandated purchases of health care,

B.     A permanent injunction forbidding Defendants from prospectively enforcing Section 5000A of Act in a manner inconsistent with the above-described declaration,

C.     A declaration that the Final Rule cannot be interpreted to allow a Premium Tax Credit under Code § 36B to a Qualifying Individual with respect to a coverage month if neither the Qualifying Individual nor any of his /her Dependents is enrolled for coverage under a Qualifying Health Plan through a State Exchange under ACA § 1311, even if one or more of the

Qualifying Individual or his/her Dependents is enrolled for coverage under a Qualifying Health Plan through an Exchange established by HHS under ACA § 1321(c); or, in the alternative,

D.    A declaration that the Final Rule cannot be interpreted to allow a Premium Tax Credit under Code § 36B to a Qualifying Individual with respect to a coverage month if neither the Qualifying Individual nor any of his /her Dependents is enrolled for coverage under a Qualifying Health Plan through a State Exchange under ACA § 1311, even if one or more of the Qualifying Individual or his/her Dependents is enrolled for coverage under a Qualifying Health Plan through an Exchange established by HHS under ACA § 1321(c); or, in the alternative,

E.    A declaration that pursuant to the APA the Final Rule is unconstitutional and void,

F.    A declaration that the Final Rule as applied to an employee of the State of Oklahoma is unconstitutional and void,

G.    A permanent injunction forbidding Defendants from prospectively enforcing the Final Rule in a manner inconsistent with the above-described declarations,

H.    Alternatively, in the event the Act provides or is interpreted to provide that an Exchange established by HHS under Section 1321(c ) of the Act is a form of what the Act refers to as "an Exchange established by a State under Section 1311 of [the Act]," a declaration that Section 1321(c) is unconstitutional and void,

I.    A permanent injunction forbidding Defendants from prospectively enforcing the Section 1321(c) in a manner inconsistent with the above-described declaration,

J.    A judgment in favor of Plaintiff against Defendants for expenses of this litigation, including reasonable attorneys' fees and costs,

K.    Such other equitable relief to which the State of Oklahoma may be entitled.

Respectfully submitted,


**s/ E. SCOTT PRUITT**
**E. SCOTT PRUITT**, **OBA #15828**
**ATTORNEY GENERAL OF OKLAHOMA**
**PATRICK R. WYRICK, OBA #21874**
**SOLICITOR GENERAL**
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-4396
(405) 522-0669 (facsimile)
Service email: fc.docket@oag.state.ok.us
                    Scott.Pruitt@oag.ok.gov
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Joel McElvain
Susan S. Brandon


**s/ E. SCOTT PRUITT**

23