# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA, ex rel. Scott  )
Pruitt, in his official capacity as Attorney )
General of Oklahoma,       )
              )
    **Plaintiff,**     )
              )
v.              )  **Case No. CIV-11-30-RAW**
              )
KATHLEEN SEBELIUS, in her official )
capacity as Secretary of the United States )
Department of Health and Human Services; )
and JACOB J. LEW[1], in his official  )
capacity as Secretary of the United States )
Department of the Treasury,    )
              )
    **Defendants.**    )

## ORDER

   Before the court is the motion of the defendants to dismiss the amended complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) F.R.Cv.P. The court held a hearing regarding the motion on June 20, 2013 and now issues its ruling.[2] "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of a complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir.2002). The court construes the present motion as a facial attack. In reviewing a facial attack, the court presumes all of the allegations contained in the amended complaint

---

[1]Pursuant to Rule 25(d) F.R.Cv.P., Jacob J. Lew is substituted as defendant for Timothy Geithner.

[2]A court must determine whether it has subject-matter jurisdiction before it reaches the merits and decides to grant relief. *See Haywood v. Drown,* 129 S.Ct. 2108, 2126 (2009).

to be true.  *Id.*  The court is not bound by conclusory allegations, unwarranted inferences, or legal conclusions.  *Hackford v. Babbitt,* 14 F.3d 1457, 1465 (10th Cir.1994).[3]

First, a brief summary of the litigation's substance is necessary.  President Obama signed the Patient Protection and Affordable Care Act ("ACA" or "the Act") into law on March 23, 2010.  The Act contains a minimum coverage provision (which has also been called the "individual mandate") at 26 U.S.C. §5000A.  Generally, that provision imposes a "penalty" on any taxpayer who is an "applicable individual" and fails to obtain "minimum essential coverage."  The Supreme Court has upheld that provision as a valid exercise of Congress's taxing power.  *See National Federation of Independent Business v. Sebelius,* 132 S.Ct. 2566 (2012).  The present lawsuit was stayed pending the Supreme Court decision.  After the stay was lifted, plaintiff filed an amended complaint.  The amended complaint retains a claim regarding the minimum coverage provision (Count I).

As pertinent to the remainder of plaintiff's claims, the Act provides: "Each State shall, not later than January 1, 2014, establish an American Health Benefit Exchange . . . for the State that facilitates the purchase of qualified health plans."  42 U.S.C. §18031(b)(1).[4]  Despite the use of the word "shall," a state may choose not to establish an exchange.  *See* 42

---

[3]In the course of a factual attack, the court may conduct a limited evidentiary hearing and consider evidence outside the pleadings.  *See Stuart v. Colo. Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir.2001).  The hearing held in this case was not an evidentiary hearing and the court declines to consider materials beyond the amended complaint in resolving the present motion.

[4]"Exchange means a governmental agency or non-profit entity that meets the applicable standards of this part and makes QHPs [qualified health plans] available to qualified individuals and qualified employers."  45 C.F.R. §155.20.

U.S.C. §18041(b)-(c).[5] Oklahoma is one of the states which has made such a decision. The Act provides that in such a circumstance, the federal government may establish an exchange within the "non-electing" state. *See* 42 U.S.C. §18041(c). The Act additionally provides premium assistance subsidies (in the form of tax credits) for individuals who purchase insurance through an exchange. In describing how to calculate the amount of the tax credit, the Act describes a "taxpayer . . . [who] is covered by a qualified health plan . . . that was enrolled in through [sic] an Exchange *established by the State under section 1311* [i.e., 42 U.S.C. §18031] of the [ACA]." 26 U.S.C. §36B(c)(2)(A)(i) (emphasis added). In other words, under plaintiff's reading of the Act, the subsidy is only available for individuals who purchase insurance through an exchange established by a State.

The Internal Revenue Service ("IRS") has promulgated a rule which provides that subsidies shall be available to anyone "enrolled in one or more qualified health plans through an Exchange." 26 C.F.R. §1.36B-2(a)(1). Exchange is then defined to mean "a State Exchange, regional Exchange, subsidiary Exchange, *and a Federally-facilitated Exchange.*" 45 C.F.R. §155.20; 26 C.F.R. §1.36B-1(k) (emphasis added). Plaintiff claims, accordingly, that while the Act itself says that subsidies are available only to individuals who buy insurance through state-established exchanges, the IRS rule eliminates that statutory prerequisite.

---

[5]*See Printz v. United States,* 521 U.S. 898, 935 (1992)("Congress cannot compel the States to enact or enforce a federal regulatory program.")

Further, the Act contains an "employer mandate."[6]  This provision may require an "assessable payment" by an "applicable large employer" if that employer fails to provide affordable health care coverage to its full-time employees and their dependents.  *See* 26 U.S.C. §4980H(a) - (b).  Under plaintiff's reading, the availability of the premium assistance subsidy effectively triggers the "assessable payments" used by the Act to enforce the employer mandate.  The payment is only triggered if at least one employee enrolls in a plan, offered through an Exchange, for which "an applicable premium tax credit . . . is allowed or paid."  *Id.*

In Count I, plaintiff asks the court to declare that the minimum coverage provision exceeds the power of Congress to regulate interstate commerce and to enjoin the defendants from enforcing the mandate in a manner inconsistent with such a legal ruling.

In Count II, plaintiff challenges the IRS Rule as *ultra vires*.  Plaintiff seeks a declaration that the term "Exchange" as used in the IRS Rule excludes any agency or entity other than one established by the State and that the term "Federally-facilitated Exchange" is excluded from the term "Exchange" as used in the IRS Rule.  Plaintiff also seeks an injunction prohibiting the defendants from acting in a manner inconsistent with such a declaration.

---

[6]The Department of the Treasury has recently announced that the employer mandate will not go into effect until January 1, 2015.  The delay does not affect employees' access to premium tax credits or any other provision of the ACA.  *See* Defendants' Notice of Supplemental Authorities (#65) at 3.

In Count III, plaintiff challenges the IRS Rule as arbitrary and capricious under the Administrative Procedure Act. Plaintiff seeks both a declaration that the IRS Rule is invalid and an injunction against its enforcement.

In Count IV, plaintiff challenges the IRS Rule as unconstitutional as applied to employees of the State of Oklahoma. Plaintiff seeks a declaration that the IRS Rule as applied to an employee of the State of Oklahoma is unconstitutional and void.

In Count V, plaintiff presents what it describes as an "additional or alternative claim for relief" in the event the defendants argue that an exchange set up by the federal government in this circumstance qualifies as an exchange established by a State. Plaintiff seeks a declaration that such an interpretation violates the Tenth Amendment of the United States Constitution because it commandeers state governmental authority, and an injunction forbidding defendants from enforcing 42 U.S.C. §18041(c) in a manner inconsistent with such a declaration.[7]

Defendants contend dismissal is appropriate because (1) Oklahoma lacks standing to sue and (2) the Anti-Injunction Act ("AIA") bars Oklahoma's attempt to restrain the assessment and collection of the employer mandate.[8] The Supreme Court recently reiterated

---

[7] Declaratory and injunctive relief may be sought under 28 U.S.C. §2201-02, and Rules 57 and 65 F.R.Cv.P. Jurisdiction is premised upon 28 U.S.C. §1331.

[8] Besides the elements of "constitutional standing," to be discussed, a lack of "prudential standing" may prevent judicial resolution of a case even where constitutional standing exists. *See Habecker v. Town of Estes Park, Colo.,* 518 F.3d 1217, 1224 n.7 (10th Cir.2008). Prudential standing doctrines are not jurisdictional and may be waived. *Finstuen v. Crutcher,* 496 F.3d 1139, 1147 (10th Cir.2007). Defendants have not raised prudential standing in the present motion.

that standing "requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry,* 133 S.Ct. 2652, 2661 (2013) . "In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm. 'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.'" *Id.* (quoting *Diamond v. Charles,* 476 U.S. 54, 62 (1986)). "In light of this 'overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of [an] important dispute and to 'settle' it for the sake of convenience and efficiency." *Id.* (quoting *Raines v. Byrd,* 521 U.S. 811, 820 (1997)).[9]

The burden to establish standing rests on the party invoking federal jurisdiction. *See Petrella v. Brownback,* 697 F.3d 1285, 1292 (10th Cir.2012). The evidence needed to carry that burden depends on the stage of litigation. *Essence, Inc. v. City of Federal Heights,* 285 F.3d 1272, 1280 (10th Cir.2002). When evaluating a plaintiff's standing at the motion to dismiss stage, the court must accept as true all material allegations of the complaint, and must

---

[9]The Tenth Circuit has recently elaborated as follows: (1) Injury in fact means an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical; (2) Plaintiff must show there is a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged conduct *of the defendant*, and not the result of independent action of some third party not before the court; (3) Finally it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Cressman v. Thompson,* 2013 WL 2501938 (10th Cir.2013). As this court reads the briefing, only the injury-in-fact element is disputed for purposes of the present motion.

construe the complaint in favor of the complaining party. *Initiative & Referendum Inst. v. Walker,* 450 F.3d 1082, 1089 (10th Cir.2006). At this stage, the plaintiff's burden in establishing standing is lightened considerably. *Petrella,* 697 F.3d at 1292. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. *Southern Utah Wilderness Allliance v. Palma.,* 707 F.3d 1143, 1152 (10th Cir.2013). *See also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)(at motion to dismiss stage, plaintiff must allege sufficient facts to render claim plausible).

Moreover, states deserve "special solicitude" in standing analysis. *Wyoming v. U.S. Dep't of Interior,* 674 F.3d 1220, 1238 (10th Cir.2012)(citing *Massachusetts v. E.P.A.,* 549 U.S. 497, 520 (2007)). The Tenth Circuit noted, however, "the lack of guidance on how lower courts are to apply the special solicitude doctrine to standing questions." *Id.* This court takes comfort from this statement; however, the Tenth Circuit also reiterated that special solicitude does not eliminate the obligation to establish a concrete injury. *Id.*

Whatever this special solicitude may encompass, the Supreme Court held in *Massachusetts v. Mellon,* 262 U.S. 447 (1923), that a state does not have *parens patriae* standing to challenge the constitutionality of federal regulation on behalf of their citizens. "[T]he naked contention that Congress has usurped the reserved powers of the several States by the mere enactment of a statute" does not suffice to establish a State's standing to challenge the law. *Id.* at 483. *See also Wyoming v. U.S. Dept. of Interior,* 674 F.3d 1220,

1232 (10th Cir.2012)(*parens patriae* not available when a state sues the federal government because the federal government is presumed to represent the citizens' interests.) For its part, the State of Oklahoma purports to disavow any reliance upon *parens patriae* standing, contending that it does not indirectly asserts its citizens' interests, but rather directly asserts its own sovereign interests. Actually, the amended complaint and briefing reflect a somewhat more complicated situation. At points, Oklahoma asserts sovereign interests (or State *qua* State interests).[10] At other points, Oklahoma asserts an injury to itself as a large employer. These contentions for standing appear to have been somewhat conflated in the

---

[10]The boundaries of such interests are not brightly demarcated. The Constitution established a system of "dual sovereignty between the States and the Federal Government," *Gregory v. Ashcroft,* 501 U.S. 452, 457 (1991), in which the States "retain 'a residuary and inviolable sovereignty.'" *Alden v. Maine,* 527 U.S. 706, 715 (1999)(quoting The Federalist No. 39)(James Madison). As pertinent to the case at bar, the Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. "The Supreme Court at one time regarded the Tenth Amendment as little more than a tautology that could not support a cause of action . . . . More recently, however, the Court has embraced the view that the states may invoke the Tenth Amendment as a basis for invalidating federal action." *Treasurer of N.J. v. U.S. Dep't of Treasury,* 684 F.3d 382, 404 (3d Cir.2012)(citation omitted) "The federal balance is, in part, an end in itself, to ensure that States function as political entities in their own right." *Bond v. United States,* 131 S.Ct. 2355, 2364 (2011).

In *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592 (1982), the Supreme Court said that states have legally protected sovereign interests in (1) "the exercise of sovereign power to create and enforce a legal code, both civil and criminal" and (2) "the demand for recognition from other sovereigns." *Id.* at 601. In *Bond* , the Court reiterated that standing requirements "must be satisfied before an individual may assert a constitutional claim; and in some instances, the result may be that a State is the only entity capable of demonstrating the requisite injury." 131 S.Ct. at 2366.. *See also South Carolina v. Katzenbach,* 383 U.S. 301 (1966), in which standing was granted to the state, not as *parens patriae* but in its own right, because the Voting Rights Act of 1965 arguably invaded powers reserved to the states. *Id.* at 323-327.

Scholars have addressed this aspect of a case such as the one presently before the court. "Specifically, where the federal government acts on states as states, and directly affects state interests, states may have standing to challenge such actions in federal court." Jonathan H. Adler & Michael F. Cannon, *Taxation Without Representation: The Illegal IRS Rule to Expand Tax Credits Under the PPACA,* 23 HEALTH MATRIX 119, 193 (2013)(footnote omitted). "[W]hen a state truly is the federal stakeholder against the federal government, state standing is not just appropriate, but necessary." Stephen Vladeck, *States' Rights and State Standing,* 46 U. RICH. L. REV. 845, 848 (2012).

present case. The court seeks to separate them. In any event, the court will now address each claim of the amended complaint individually.[11]

As stated, in Count I plaintiff asks the court to revisit the minimum coverage or individual mandate provision of the Act, 26 U.S.C. §5000A. The Supreme Court upheld that provision in *National Federation of Independent Business v. Sebelius,* 132 S.Ct. 2566 (2012) as a valid exercise of Congress's taxing power. The opinion also contains discussion of the provision's validity or lack thereof under the Commerce Clause. The observation has been made that these statements may be dicta or binding precedent. *See United States v. Henry,* 688 F.3d 637, 641 n.5 (9th Cir.2012). Plaintiff requests a declaratory judgment that, while the mandate is valid as an exercise of the taxing power, Article 2, section 37 of the Oklahoma Constitution[12] remains valid as a protection against <u>mandated</u> purchases of health insurance.[13]

The quoted provision of the Oklahoma Constitution is similar to the Virginia statute involved in *Virginia ex rel. Cuccinelli v. Sebelius,* 656 F.3d 253 (4th Cir.2011), *cert. denied,* 133 S.Ct. 59 (2012). In that case, the State of Virginia challenged the constitutionality of the individual mandate. Virginia sought standing on its own behalf, relying upon the Virginia

---

[11]Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought. *See Davis v. Federal Election Comm'n,* 554 U.S. 724, 734 (2008).

[12]In pertinent part, that Article states "To preserve the freedom of Oklahomans to provide for their health care: 1. A law or rule shall not compel, directly or indirectly, any person, employer or health care provider to participate in any health care system; and 2. A person or employer may pay directly for lawful health care services and shall not be required to pay penalties or fines for paying directly for lawful health care services." Okla. Const. art. 2, §37(B).

[13]As to Count 1, Oklahoma asserts standing *qua* State, invoking a State's "power to create and enforce a legal code." *Snapp,* 458 U.S. at 601.

Health Care Freedom Act ("VHCFA"). The state law was signed into law by the Governor of Virginia the day after President Obama had signed the ACA into law. *Id.* at 267. The VHCFA declared that no person could be forced to buy health insurance against his or her will. The Fourth Circuit concluded that the state lacked standing to challenge the individual mandate, because the state law did "not confer on Virginia a sovereign interest in challenging the individual mandate." *Id.* at 269.

The Fourth Circuit distinguished the Tenth Circuit decision in *Wyoming ex rel. Crank v. United States,* 539 F.3d 1236 (10th Cir.2008), in which a state was allowed to challenge a federal administrative decision that a state expungement statute would not have the intended effect under federal law. The Tenth Circuit stated that "[f]ederal regulatory action that preempts state law creates a sufficient injury-in-fact" and Wyoming's allegation was sufficient because the federal interpretation of the Wyoming law "interferes with Wyoming's ability to enforce its legal code." *Id.* at 1242. The Fourth Circuit stated that the *Crank* decision (and others where a state was found to possess sovereign standing) presented situations in which "the state statute at issue regulated behavior or provided for the administration of a state program." *Cuccinelli,* 656 F.3d at 269. The Fourth Circuit then concluded that, by contrast, the Virginia law "regulates nothing and provides for the administration of no state program. Instead, it simply purports to immunize Virginia citizens from federal law." *Id.* at 270.

If the Fourth Circuit and the Tenth Circuit decisions are in conflict, this court is bound to follow the Tenth Circuit. *See United States v. Spedalieri,* 910 F.2d 707, 709 n.2 (10th

Cir.1990)("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits"). This court concludes the Tenth Circuit decision in *Crank* is distinguishable. First, the Fourth Circuit decision is precisely on point to this case, while the Tenth Circuit decision is merely analogous. Next, in the Tenth Circuit decision, the federal statute dealt with firearm rights of someone convicted of a domestic violence misdemeanor offense, including a misdemeanor under state law. The federal statute excluded any misdemeanor conviction which had been expunged or set aside. *Crank,* 539 F.2d at 1239. The state statute adopted by Wyoming was an attempt to comply with federal law by establishing a procedure to expunge misdemeanor convictions "for the purposes of restoring any firearms rights lost." *Id.* at 1238. The federal agency informed the State, however, that the state statute did not in fact satisfy the definition for federal requirements. Therefore, Wyoming had standing to resolve the issue.

Here, Article 2, Section 37 of the Oklahoma Constitution indicates that it was "[a]dded by State Question No. 756, Legislative Referendum No. 356, adopted at election held on November 2, 2010." The effective date makes clear that the Oklahoma provision was adopted in response to the ACA. Similarly to the VHCFA before the Fourth Circuit, this provision of the Oklahoma Constitution "regulates nothing and provides for the administration of no state program. Instead, it simply purports to immunize [Oklahoma] citizens from federal law." *Virginia,* 656 F.3d at 270. As already noted, the Tenth Circuit did make the general statement that "[f]ederal regulatory action that preempts state law creates a sufficient injury-in-fact to satisfy this prong [of the standing analysis]". *Crank,* 539

11

F.3d at 1242.  Under the facts before the Tenth Circuit, however, this court believes the statement as written constitutes dicta rather than a holding.[14]  The Tenth Circuit (and the two circuit court cases which it cites), however, was not addressing a situation in which a State passed a law in response to and contrary to a federal law with preemption being the unavoidable and inevitable result.[15]

Moreover, as the court reads the pertinent provision of the Oklahoma Constitution, it declares an <u>individual</u> right for an Oklahoma resident not to be compelled to participate in certain conduct.  Conceivably, a set of facts might develop in which an individual Oklahoma resident sought to challenge the individual mandate under the Commerce Clause and the mandate's interplay with the Oklahoma Constitution.   In the case at bar, such a ruling would seem to amount to an advisory opinion, which is prohibited.  *See Clark v. State Farm Mut. Auto. Ins. Co.,* 590 F.3d 1134, 1138 (10th Cir.2009).  Count I will be dismissed for lack of standing.[16]

In Count II, plaintiff contends it is entitled to a declaration that the term "Exchange" in the IRS rule must exclude a "Federally-facilitated Exchange" and only apply to an agency

---

[14]Broad language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority.  *United States v. Smith,* 454 Fed.Appx. 686, *694 (10th Cir.2012)(quoting *Smith v. Orr,* 855 F.2d 1544, 1550 (Fed.Cir.1988)).

[15]"[P]reemption, of and by itself, cannot create a sufficient interest on the state's part to get around *Mellon. [Crank],* the Tenth Circuit decision on which the Virginia district court rested its analysis, is not to the contrary."  Vladeck, *supra* note 10, at 868-69 (footnotes omitted).

[16]Oklahoma's basic claim under Count 1 appears to have been recently rejected on the merits in *Sissel v. U.S. Dep't of Health & Human Servs.,* 2013 WL 3244826 (D.D.C.2013).  Having found lack of standing, this court does not reach the merits.

or entity established by the State.  In the heading and text of the pertinent section of its response to the pending motion, plaintiff appears to primarily assert standing *qua* State.  The heading of the section states that plaintiff has standing "because the IRS Rule deprives Oklahoma of its authority under the Act to be the sole decision-maker regarding the availability of premium tax credits and other payments under the Act." (#53 at 6).  Here, and at other points in the amended complaint and briefing, plaintiff's argument is similar to that made in a polemical law review article previously cited.  After mentioning the Fourth Circuit decision, the article states:

> Here, however, states could claim that the IRS rule directly affects state interests created by the PPACA.  The health care law, as written, gives states a choice of whether to create an Exchange that complies with the Act's requirements in return for start-up funds, tax credits, subsidies, and tax penalties on employers and a greater number of individual residents.  The IRS rule, however, eliminates the choice by providing for tax credits, subsidies and tax penalties without regard to whether a state creates its own Exchange.  Insofar as this rule eliminates a choice that the statute reserved to the states, an objecting state should have standing to challenge the legality of the rule.

Adler & Cannon, *supra* note 10, at 194 (footnote omitted).  In the footnote to this passage, the authors cite the Tenth Circuit decision in *Crank* (albeit with a *Cf.* signal).  This court does not read that decision as standing for such a broad proposition.  Plaintiff has also sought to invoke the following principle:   "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."

*Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n.3 (1973).[17]   In other words, plaintiff argues that Congress has granted it a statutory right to determine whether awards of premium tax credits or assessments of the large employer tax may be made (#53 at 8).  This court is persuaded that the Supreme Court's quoted language usually has been invoked regarding the creation of <u>individual</u> rights and involving the question whether the statute provides a right to sue.  *See, e.g., Warth v. Seldin,* 422 U.S. 490, 500 (1975)("Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.").

On the other hand, "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Raines v. Byrd,* 521 U.S. 811, 820 n.3 (1997)(citation omitted).  *See also Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").  To be clear, plaintiff is not arguing that either the ACA or the IRS Rule expressly confers standing or grants it a right to sue.  The argument which is made, however, reflects another difficulty in "State *qua* State" standing in this case.  As this court understands it, plaintiff is arguing that Congress has provided standing indirectly, by enacting a statute that <u>creates</u> a <u>new</u> legal

---

[17]Any such injury must still be a <u>concrete</u> injury, as opposed to "the loss of a right in the abstract." *See State Nat'l Bank of Big Spring v. Lew,* 2013 WL 3945027, at *12 (D.D.C.2013).

interest, "the invasion of which will confer standing." *See Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41 n.22 (1976).

Such creation of new interests may be accomplished as to individuals, but it is unclear that it may be as to States. The legal interest asserted by the State of Oklahoma is state sovereignty under the Tenth Amendment. This is not a "new" legal interest, and a statute has no power to create it. To the extent plaintiff argues that the new interest was in the "choice" whether to create an Exchange, the court agrees with defendants that this is *parens patriae* standing by another name. The allegations in the amended complaint do not assert injury to the State's proprietary interests. The provision of federal tax credits to Oklahoma residents does not command Oklahoma officials to take action, or refrain from taking any action. All pertinent conduct takes place at the federal level.

In *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992), plaintiff environmental organizations sued to enjoin a regulation rescinding a prior requirement that federal agencies consult the Secretary of the Interior before approving or funding projects in foreign nations that might jeopardize the existence of threatened or endangered species or harm their habitat there. The Endangered Species Act authorized the suit in a "citizen suit" provision. *Id.* at 571-72. Nevertheless, the Supreme Court held that "a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case

or controversy." *Id.* at 573-574.[18]  In this court's reading, *Lujan* undercuts the argument for "State *qua* State" standing in the case at bar.[19]  That is to say, this court finds no injury-in-fact in a "choice" granted to a State by a federal statute which is then allegedly "taken away" by a federal regulation.  If the choice only existed because it was <u>granted</u> by Congress, necessarily State sovereignty is not implicated under the Supremacy Clause. The court concludes Oklahoma has failed to establish standing *qua* State for purposes of Count II.[20]

This does not end the analysis.  Count II also alleges that the IRS will expand the circumstances under which the "assessable payment" (§4980H) may be imposed against certain employers, with the result that an employer may be required to make such a payment under circumstances not provided for by the Act itself.  (Amended Complaint, ¶51). Additionally, scattered throughout the amended complaint are references to such possible employer payments and compliance costs.  *See, e.g.,* ¶10 ("the payment of the subsidy for even one employee triggers costly obligations on the part of the employer . . .); ¶11 ("employers will be subjected to liabilities and obligations under circumstances not

---

[18]The Court quoted this statement in its recent decision in *Hollingsworth v. Perry,* 133 S.Ct. 2652, 2662 (2013).  Further, "'an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.'" *Id. (*quoting *Allen v. Wright,* 468 U.S. 737, 754 (1984).

[19]"Under *Lujan*, therefore, it appears that legislation that both creates legal obligations and authorizes certain individuals to enforce those obligations might not, without more, satisfy the requirements for Article III standing."  Trevor W. Morrison, <u>Private Attorneys General and the First Amendment</u>, 103 Mich. L. Rev. 589, 623 (2005)

[20]This court also notes in passing that while *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) speaks of "special solicitude" to States in standing analysis, *id.* at 520, the Supreme Court appears to base its finding of standing upon environmental damage to state-owned property.  *Id.* at 522, 526.

authorized by Congress . . . ); ¶14 ("the State in its capacity as a large employer that would presumably be subject to the Act's 'employer mandate' and the accompanying possibility of end-of-the-year tax assessments by the IRS"); ¶33 ("Applicable Large Employers will be forced to take actions and incur expenses well in advance of January 1, 2014[21], to prepare for avoiding and/or minimizing exposure to Section 4980H Assessable Payments that Defendants will assert are triggered by such Advance Payments"); ¶37 ("The Final Rule already has had and will continue to have an adverse effect on employers within the State of Oklahoma").

The distinction between the employer mandate and anticipatory compliance costs for purposes of standing analysis was addressed in *Liberty University, Inc. v. Lew,* 2013 WL 3470532 (4th Cir.2013). In that case, plaintiff sought to challenge the employer mandate on multiple grounds. As in this case, defendants argued that plaintiff lacked standing because it was speculative whether plaintiff (in its capacity as large employer) would ever be subject to the §4980H penalty.[22] The appellate court said this "argument may well be correct - - as far as it goes." *Id.* at *6 (footnote omitted). The court then noted plaintiff's allegations that the employer mandate and regulations would increase the cost of care. The court found these allegations plausible. "Therefore, "[e]ven if the coverage Liberty currently provides

_____

[21]Again, the effective date of the employer mandate is now January 1, 2015.

[22]Also as here, defendants argued that plaintiff already provided health care coverage to its employees that qualified as minimum essential coverage. In the case at bar, defendants (and plaintiff in response) have cited materials outside the pleadings. The court declines to consider these materials in the present context, having construed the pending motion as a facial challenge.

17

ultimately proves sufficient, it may well incur additional costs because of the administrative burden of assuring compliance with the employer mandate, or due to an increase in the cost of care." *Id.* at *7. The Fourth Circuit then cited other decisions holding that increased compliance costs or administrative burden constituted injury in fact for standing purposes. Finally, the Fourth Circuit concluded that (in distinction to the employer mandate penalty) "Liberty's injury is imminent even though the employer mandate will not go into effect until January 1, 2015, as Liberty must take measures to ensure compliance in advance of that date." *Id.*[23]

The allegations in Oklahoma's amended complaint are not nearly as specific as the allegations made in *Liberty University.* Most of them appear to be directed toward establishing "State *qua* State" standing. Oklahoma does not allege an increase in the cost of providing health insurance coverage. There are, however, various references to the necessity to "obligations", "actions", and "expenses." At the motion to dismiss stage, under the extremely lenient pleading standards which are applicable, the court finds that plaintiff has made sufficient allegations demonstrating standing to challenge the IRS Rule in its own

---

[23]As in the case at bar, defendants had cited *Clapper v. Amnesty Int'l USA,* 133 S.Ct. 1138, 1147 (2013)(threatened injury must be certainly impending to constitute injury in fact and allegations of possible future injury are not sufficient).

capacity as an employer.[24]  Defendants of course may still raise standing as to Count II in a motion for summary judgment if they so choose.

In Count III, plaintiff seeks to challenge the IRS Rule pursuant to the Administrative Procedure Act ("APA").  As evidently pertinent here under the amended complaint's allegations, a court may set aside a regulation that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, pursuant to 5 U.S.C. §706(2)(A), or which is found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, pursuant to 5 U.S.C. §706(2)(C).[25]

The court finds that the same analysis set forth above as to Count II applies to Count III was well.  Many of the allegations specific to this Count appear directed toward "State *qua* State" standing.  As to that type of standing, the court finds it has not been plausibly alleged by the amended complaint in this case.[26]  By contrast, under the standard applicable

---

[24]In its response to the motion, plaintiff has cited examples of what could be described as compliance costs or administrative burden.  (#53 at 9-10, 11-12).  These have not been considered in resolving the defendants' motion.  It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.  *Kearney v. Dimanna,* 195 Fed.Appx. 717, 721 n.2 (10th Cir.2006)(citation omitted).

[25]Neither the amended complaint nor the motion addresses exhaustion of administrative remedies.  "[E]xhaustion of APA claims is generally required."  *Gilmore v. Weatherford,* 694 F.3d 1160, 1166 (10th Cir.2012).  Because the amended complaint as a whole does not stand or fall on whether Count III survives the present motion, the court merely notes the issue at this time.

[26]In a law review article, the author suggests that a distinction supporting the Tenth Circuit decision in *Crank* is that it was a lawsuit brought pursuant to the APA.  ("There, as was true in *Massachusetts v. EPA,* Wyoming's suit was specifically authorized by (and brought pursuant to) the Administrative Procedure Act").  Vladeck, *supra* note 10, at 869 (footnotes omitted).  Another law review article cites *Crank* for the proposition that "where a statute creates a regulatory mechanism that acts on state governments, an objecting state has standing *under the Administrative Procedure Act* to challenge federal regulatory actions that compromise state interests in violation of the authorizing statute."  Adler & Cannon, *supra* note 10, at 193-94 (emphasis added).  These passages seem to suggest that "State *qua* State" standing has a <u>stronger</u> purchase in a suit under the APA.

19

at this stage of the litigation, the court finds plaintiff has made sufficient plausible allegations supporting standing for the State of Oklahoma in its capacity as a large employer. Count III will not be dismissed, but again the issue of standing may be revisited at a later stage of the litigation.

In Count IV, plaintiff seeks a declaration that the IRS rule is unconstitutional as applied to employees of the State of Oklahoma. Plaintiff acknowledges *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528 (1985), which held that state employees may be forced to follow the federal Fair Labor Standards Act's wage and hour rules. Plaintiff contends that subsequent Supreme Court decisions have called *Garcia* into question. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Envt.,* 523 U.S. 83, 89 (1998)(emphasis added). *Garcia* has not been overruled. Therefore, it is binding on this court. Count IV will be dismissed.

This court is uncertain how such a doctrine (if that is indeed the authors' argument) would be applied. Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements for standing under Article III. *State of Utah v. Babbitt,* 137 F.3d 1193, 1203 n.11 (10th Cir.1988)(citation omitted). An argument (if such were made) that the Supreme Court's statement in *Massachusetts v. E.P.A.,* 549 U.S. 497, 520 (2007) regarding "special solicitude" for States in standing analysis particularly applies in APA cases appears inconsistent with *Wyoming v. U.S. Dep't of the Interior,* 674 F.3d 1220 (10th Cir.2012). In that case, the Tenth Circuit still insisted upon a concrete injury. *Id.* at 1238.

Plaintiff describes Count V as "an *alternative* claim for relief *in the event that* Defendants assert that an Exchange created by HHS is a form of 'Exchange established by a state under Section 1311' [as that phrase is used in the Act]." (#53 at 16)(emphasis added). Defendants have given no indication of making such an argument, but the merits have not yet been reached. The issue raised by the present motion is lack of standing. If defendants presented the pertinent argument, arguably "State *qua* State" standing would exist. Count V, although hypothetical and contingent as it stands, will not be dismissed at this time.

As an additional ground for dismissal of Counts II -V, defendants invoke the Anti-Injunction Act ("AIA").[27] The AIA prohibits "any person" from maintaining a suit "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. §7421(a).[28] Generally, the AIA establishes a "pay first, litigate later" regime. *See Lonsdale v. United States,* 919 F.2d 1440, 1443 (10th Cir.1990). Both parties have addressed 26 U.S.C. §4980H. As already stated, that section imposes an "assessable penalty" on large employers that fail to offer their employees minimum essential coverage. 26 U.S.C. §4980H(a). In two places, Congress uses the word "tax" to refer to this penalty. *See* §§4980H(b)(2) and (c)(7). Such characterization is not consistent, however.

---

[27]As pertinent to Count III, the AIA applies to actions brought pursuant to the Administrative Procedure Act. *See Fostvedt v. United States,* 978 F.2d 1201, 1203-04 (10th Cir.1992).

[28]The Supreme Court has held that "the constitutional nature of a taxpayer's claim" is of "no consequence under the Anti-Injunction Act." *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 759 (1974). *See also United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. 1, 10 (2008)("This is so even though the Anti-Injunction Act's prohibitions impose upon the wronged taxpayer requirements" that "the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted.").

After the hearing in this case, the Fourth Circuit issued its decision in *Liberty University,* previously mentioned in the context of standing. The Fourth Circuit also addressed the application of the AIA to a challenge of the employer mandate. The appellate court concluded "the statutory text suggests that Congress did not intend the exaction to be treated as a tax for purposes of the AIA." *Liberty University,* 2013 WL 3470532 at *5. Accordingly, "we hold that the employer mandate exaction, like the individual mandate exaction, does not constitute a tax for purposes of the AIA. Therefore, the AIA does not bar this suit." *Id.* at *6. This court adopts the analysis of the Fourth Circuit.

Also after the hearing in this case, the Tenth Circuit issued its decision in *Hobby Lobby Stores, Inc. v. Sebelius,* 2013 WL 3216103 (10th Cir.2013). That case involved a challenge to the "contraception mandate," a requirement growing out of regulations promulgated under a different section of the ACA. The *en banc* court held unanimously that the AIA did not apply.[29] Specifically, the Tenth Circuit held that the exaction imposed for failure to comply with the contraception mandate was a "regulatory tax," and just one of many collateral consequences of the failure to comply. *Id.* at *7.

The appellate court concluded that "the AIA does not apply to 'the exaction of a purely regulatory tax" *Id.* at *8 (citation omitted). The Tenth Circuit characterized the case as follows: "Hobby Lobby and Mardel are not seeking to enjoin the collection of taxes or the execution of any IRS regulation; they are seeking to enjoin the enforcement, by whatever

---

[29]Indeed, the parties agreed on this point as well. *Id.* at *7.

method, of one HHS regulation that they claim violates their [Religious Freedom Restoration Act] rights" *Id.* at *7 (emphasis added). Therefore, "just as the AIA does not apply to any suit against the individual mandate, which is enforced by the IRS, so too does the AIA not apply to any suit against the contraceptive-coverage requirement, even though it also may be enforced by the IRS." *Id.* at *8 (citation omitted).

Plaintiff draws from *Hobby Lobby* that "challenges to regulatory requirements are not barred by the Anti-Injunction Act, even when a collateral consequence of enjoining the enforcement of the regulation is that the federal government will be prevented from collecting a tax". (#64 at 4). Defendants contend that the Tenth Circuit's reasoning does not apply to the challenge before this court because §4980H does not impose any "collateral consequences" apart from a large employer's obligation to pay what the defendants insist is a tax. This court has found that the employer mandate is not a tax for AIA purposes and therefore need not resolve this issue. The parties in the case at bar do not appear to dispute that the tax credit eligibility provided by the IRS Rule serves as a "trigger" for the enforcement of the employer mandate. When the AIA applies (which in this case the court finds it does not), an argument that a plaintiff is merely challenging the regulation and not the penalty has been unsuccessful. *See Alexander v. "Americans United" Inc.,* 416 U.S. 752, 760-61 (1974).[30] Inasmuch as the government <u>agreed</u> that the AIA was inapplicable in

---

[30]It is intriguing that the delay of the mandate arguably makes it more difficult for a plaintiff to demonstrate an "impending" injury, but does not lighten plaintiff's burden under the AIA. The AIA was intended to "protect[ ] the expeditious collection of revenue." *South Carolina v. Regan,* 465 U.S. 367, 376 (1984). Here, no collection under the employer mandate has yet begun. A scenario could be imagined in which judicial review would be completed before assessment and collection had commenced. *See Liberty*

*Hobby Lobby*, this court would ask for further briefing on this point if it were dispositive.

In the interest of thoroughness, the court wishes to address briefly the other arguments presented. In another branch of its argument, plaintiff argues that the AIA is not "truly jurisdictional," but is better viewed as a non-jurisdictional "claims-processing" rule.[31] Plaintiff notes that in the *Hobby Lobby* decision, three judges of the Tenth Circuit examined Supreme Court precedent and appeared to find persuasive the argument plaintiff presents here, concluding, "[i]n the end, the AIA shows none of the hallmarks of a jurisdictional restriction, and has many features that collectively indicate otherwise." *Hobby Lobby*, 2013 WL 3216103 at *37 (Gorsuch, J., concurring). This statement, however, appears in a concurring opinion in an *en banc* decision and does not represent the holding of the court. Even within the discussion, Judge Gorsuch notes that both the Supreme Court and the Tenth Circuit have on other occasions referred to the statute as jurisdictional. *Id.* at *36 (citing *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 5 (1962) and *Sterling Consulting Corp. v. United States,* 245 F.3d 1161, 1167 (2001)). Both the Supreme Court and the Tenth Circuit are, of course, binding on this court. Therefore, this court must hold that the AIA, where it applies, is jurisdictional.[32]

---

*University v. Geithner,* 671 F.3d 391, 425 (Davis, J., dissenting)(4th Cir.2011). Such a result might be contrary to the literal language of the AIA itself; this court merely notes it.

[31]"Claims-processing rules" are rules that do not limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court. *See Dolan v. United States,* 130 S.Ct. 2533, 2538 (2010).

[32]In the *Hobby Lobby* decision itself, despite the parties' agreement that the AIA did not apply, the Tenth Circuit stated that it had "an independent duty to determine whether the AIA strips us of subject-matter jurisdiction." *Id.* at *7.

Plaintiff also contends (in a footnote) that States are not "persons" within the meaning of the AIA. There is "no hard and fast rule" governing whether a State qualifies as a "person" for purposes of federal law. *United States v. Cooper,* 312 U.S. 600, 604-605 (1941). The Supreme Court has interpreted the word "person" in other provisions of the Internal Revenue Code to include States. *See Sims v. United States,* 359 U.S. 108 (1959); *Ohio v. Helvering,* 292 U.S. 360 (1934). On the other hand, there is a "presumption that 'person' does not include the sovereign." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 780 (2000). This court is persuaded that while "comity and respect for our federal system demand that something more than mere use of the word 'person' demonstrate the federal intent to authorize unconsented private suit *against"* States, *Id.*at 780-781 n.9 (emphasis added), the AIA does not permit States to affirmatively sue the federal government outside statutory bounds. The court rejects plaintiff's argument.

Plaintiff also suggests (even more faintly, within the same footnote) that this case falls within the language of *South Carolina v. Regan,* 465 U.S. 367, 378 (1984) that the AIA does not apply to aggrieved parties who have no alternative forum to litigate claims. In *Cuccinelli,* the Fourth Circuit stated without elaboration that "Virginia may well be exempt from the AIA bar." 656 F.3d at 267 n.1 (citing *Regan).* In *Regan,* the State sought to challenge a federal statute which terminated a federal tax exemption for bearer bonds. South Carolina argued that the federal statute interfered with its sovereign power to raise money by issuing tax-exempt bonds, in violation of the Tenth Amendment. The reason the Supreme Court found South Carolina had no alternative forum to litigate was that the tax fell on bondholders

rather than the State. *Regan,* 465 U.S. at 379-80. The Court did not suggest (and plaintiff here has not argued) that a State may not bring a tax refund action.[33] *Regan* was a "unique suit." Hibbs v. Winn, 542 U.S. 88, 104 n.6 (2004). *See also Judicial Watch, Inc. v. Rossotti,* 317 F.3d 401, 408 n.3 (4th Cir.), *cert. denied,* 540 U.S. 825 (2003)("Because of the strong policy animating the Anti-Injunction Act, and the sympathetic, almost unique, facts in *Regan,* courts have construed the *Regan* exception very narrowly."). This declines to adopt plaintiff's suggestion in this regard.[34]

---

[33]*Cf. California v. Regan,* 641 F.2d 721 (9th Cir.1981) and *Minnesota v. United States,* 525 F.2d 231 (8th Cir.1975).

[34]"In challenging the adequacy of tax refund suits, plaintiffs hint that declaratory and injunctive relief might be available only in APA suits, and not in tax refund suits. That is wrong; indeed, the Supreme Court has indicated just the opposite." *Cohen v. United States,* 650 F.3d 717, 740 n.5 (D.C.Cir.2011)(Kavanaugh, J., dissenting). The State of Oklahoma has not made the argument referred to, but this court notes it.

It is the order of the court that the motion of the defendants to dismiss (#41) is hereby granted in part and denied in part. Count I and Count IV are dismissed. As to Count II, Count III, and Count V, the motion is denied.

**ORDERED THIS 12th DAY OF AUGUST, 2013.**

_____
HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA